UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DANIEL LOPEZ,
    Plaintiff,
vs.

MORECO CORP. and LINGENFELSER
ENTERPRISES III INC d/b/a THE
LOBSTER SHACK,
    Defendants.

## COMPLAINT

Plaintiff, DANIEL LOPEZ (hereinafter "Plaintiff" or "Mr. Lopez"), by his undersigned, hereby files this Complaint and sues Defendants, MORECO CORP. and LINGENFELSER ENTERPRISES III INC d/b/a THE LOBSTER SHACK (hereinafter "Defendants"), for injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, (hereinafter the "A.D.A"), the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 (hereinafter the "ADAAG"), and the Florida Building Code.

## JURISDICTION & VENUE

**1.** This Court has original jurisdiction over the action pursuant to 28 U.S.C., §§1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. § 12181. *et seq.*, based upon Defendants' violations of Title III of the ADA (see also, 28 U.S.C. §§ 2201 and 2202).

**2.** The subject property is a restaurant and bar located on or about 613 Lincoln Rd, Miami Beach, Florida 33139 (hereinafter "Subject Premises").

**3.** All events giving rise to this lawsuit occurred in the State of Florida. Venue is proper in this Court as the premises are located in the Southern District.

## PARTIES

4. Plaintiff, DANIEL LOPEZ, is a resident of Miami Beach, Florida, and is *sui juris*. Mr. Lopez is a qualified individual with disabilities under the ADA law. Plaintiff became a bilateral amputee, above the knee, in 2008 due to surgery and is bound to ambulate in a wheelchair. Plaintiff's access to the Subject Premises and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations offered therein was denied and/or limited because of these disabilities, and will be denied and/or limited in the future unless and until Defendants are compelled to remove the physical barriers to access and ADA violations which exist at the Subject Premises, including but not limited, to those set forth in the Complaint.

5. Defendant, MORECO CORP., is a corporation which is authorized to and does transact business in the State of Florida and within this judicial district, specifically by the commercial leasing of the Subject Premises to the Co-Defendant as a bar and restaurant

6. Pursuant to the Miami-Dade Property Appraiser's Office, Defendant, MORECO CORP., is the owner and/or operator/manager of the real property located on or about 613 Lincoln Rd, Miami Beach, FL 33139 (herein referred to as the "Subject Premises"). This is the building where the Subject Premises is located.

7. Defendant, LINGENFELSER ENTERPRISES III INC, is a corporation which is authorized to and does transact business in the State of Florida and within this judicial district, specifically by owning and/or operating the restaurant and bar located at the Subject Premises.

8. According to the State of Florida's Website, the Defendant, LINGENFELSER ENTERPRISES III INC d/b/a THE LOBSTER SHACK, received it's seating license on February 25, 2020 and its beverage license on March 4, 2020 and occupies 613 Lincoln Rd,

Miami Beach, FL 33139 (herein referred to as the "Subject Premises") as a restaurant known as "The Lobster Shack".

9. The Subject Premises is a restaurant and bar which is owned and/or operated by the Defendants and is therefore a place of public accommodation required by law to comply with the ADA and ADAAG.

## FACTUAL ALLEGATIONS AND CLAIM

10. Plaintiff, who lives less than ¾ of a mile from the Subject Premises, frequently visits the Lincoln Road Shopping District, easily one of the most popular areas in Miami Beach. During Plaintiff's most recent visit to the Subject Premises on or about October 1, 2024, he dined, and accessed to the extent possible, or attempted to access, the Subject Premises and specific areas of the Subject Premises as described in this Complaint.

11. During this most revent visit to the Subject Premises, Plaintiff personally encountered and/or observed several barriers to access in violation of the ADA and ADAAG as detailed further at Paragraph 15, below. As a result, Plaintiff has been denied access to the Subject Premises and full and equal enjoyment of the goods and services offered therein because of his disability and will continue to be denied such access as a result of those barriers.

12. These barriers to access at the Subject Premises endanger the safety of Plaintiff and all other individuals with disabilities, deny Plaintiff and others with disabilities equal access to the Subject Premises as to that of able-bodied persons, and cause undue frustration and social embarrassment as a result of the difficulties encountering such barriers to access—a social embarrassment that would not occur if the Subject Premises were in compliance with the ADA and ADAAG.

13. Plaintiff has sustained a lawful injury-in-fact pursuant to the ADA as a result of encountering the barriers to access at the Subject Premises, and suffering the ensuing discrimination, endangerment, difficulty, frustration, and embarrassment.

14. Pursuant to the mandates of 42 U.S.C. §12134(a), on September 15, 2010, the Department of Justice, Office of the Attorney General, published revised regulations for Title III of the Americans with Disabilities Act of 1990 in the Federal Register to implement the requirements of the ADA. Public accommodations were required to conform to these regulations on or before March 15, 2012.[1]

15. A specific, although not exclusive, list of unlawful physical barriers, dangerous conditions, and ADA violations which preclude and/or limit Plaintiff's ability (because of his disability) to access the Subject Premises and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Premises include:

   a) Inaccessible dining tables located at exterior storefront tv viewing area. Non-compliant height of dining tables located at exterior storefront tv viewing area exceeds maximum height allowance. Minimum percentage of existing dining tables required to be accessible not provided at exterior storefront tv viewing area. Plaintiff prefers to sit at the bar to meet people and enjoy conversation, however, if bar seating it unavailable due to larger crowds or not accessible due to his disability, he will dine at tables, but cannot due so comfortably when the dining tables are too high or lack clearance for his wheelchair.

   ADAAG 226 Dining Surfaces and Work Surfaces

   ADAAG 226.1 General.

   Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902.

   ADAAG 902 Dining Surfaces and Work Surfaces

   ADAAG 902.1 General.

   Dining surfaces and work surfaces shall comply with 902.2 and 902.3.

---

[1] "Safe Harbor. Elements that have not been altered in existing facilities on or after March 15, 2012, and that comply with the corresponding technical and scoping specification for those elements in the 1991 Standards are not required to be modified in order to comply with the requirements set forth in the 2010 Standards" 28 CFR §36.304(d)(2)(i), however, the violations described herein violate both the 1991 Standards as well as the 2010 Standards.

ADAAG 902.3 Height.

The tops of dining surfaces and work surfaces shall be 28 inches (710 mm) minimum and 34 inches (865 mm) maximum above the finish floor or ground.

**b)** Inaccessible dining tables are located at interior dining area. Required minimum knee and toe clearance not provided at dining tables located at interior dining area. A minimum percentage of existing dining tables required to be accessible not provided at interior dining area. Plaintiff prefers to sit at the bar to meet people and enjoy conversation, however, if bar seating it unavailable due to larger crowds or not accessible due to his disability, he will dine at tables, but cannot due so comfortably when the dining tables are too high or lack clearance for his wheelchair.

ADAAG 226 Dining Surfaces and Work Surfaces

ADAAG 226.1 General.

Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902.

ADAAG 902 Dining Surfaces and Work Surfaces

ADAAG 902.1 General.

Dining surfaces and work surfaces shall comply with 902.2 and 902.3.

ADAAG 902.2 Clear Floor or Ground Space.

A clear floor space complying with 305 positioned for a forward approach shall be provided. Knee and toe clearance complying with 306 shall be provided.

ADAAG 306.2 Toe Clearance.

ADAAG 306.2.3 Minimum Required Depth.

Where toe clearance is required at an element as part of a clear floor space, the toe clearance shall extend 17 inches (430 mm) minimum under the element.

ADAAG 306.2.5 Width.

Toe clearance shall be 30 inches (760 mm) wide minimum.

ADAAG 306.3 Knee Clearance.

ADAAG 306.3.3 Minimum Required Depth.

Where knee clearance is required under an element as part of a clear floor space, the knee clearance shall be 11 inches deep minimum at 9 inches above the ground, and 8 inches deep minimum at 27 inches (685 mm) above the finish floor or ground.

ADAAG 306.3.5 Width.

Knee clearance shall be 30 inches (760 mm) wide minimum.

  **c)** Inaccessible bar. Non-compliant height of bar exceeds maximum height allowance. Portion of bar required to be accessible not provided. Plaintiff prefers to sit at the bar to meet people and enjoy conversation, but cannot sit at the bar and enjoy this atmosphere as an able-bodied patron would because of the lack of an accessible portion of the bar where he can sit comfortably.

ADAAG 226 Dining Surfaces and Work Surfaces

ADAAG 226.1 General.

Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902.

ADAAG 902 Dining Surfaces and Work Surfaces

ADAAG 902.1 General.

Dining surfaces and work surfaces shall comply with 902.2 and 902.3.

Advisory 902.1 General.

Dining surfaces include, but are not limited to, bars, tables, lunch counters, and booths.

ADAAG 902.2 Clear Floor or Ground Space.

A clear floor space complying with 305 positioned for a forward approach shall be provided. Knee and toe clearance complying with 306 shall be provided.

ADAAG 902.3 Height.

The tops of dining surfaces and work surfaces shall be 28 inches (710 mm) minimum and 34 inches (865 mm) maximum above the finish floor or ground.

  **d)** Compliant signage identifying the men's restroom was not provided as required, which makes it difficult for Plaintiff to identify which restroom was allegedly accessible.

ADAAG 216 Signs

ADAAG 216.1 General.

Signs shall be provided in accordance with 216 and shall comply with 703.

ADAAG 216.2 Designations.

Interior and exterior signs identifying permanent rooms and spaces shall comply with 703.1, 703.2, and 703.5. Where pictograms are provided as designations of permanent interior rooms and spaces, the pictograms shall comply with 703.6 and shall have text descriptors complying with 703.2 and 703.5.

Advisory 216.2 Designations.

Section 216.2 applies to signs that provide designations, labels, or names for interior rooms or spaces where the sign is not likely to change over time. Examples include interior signs labeling restrooms, room and floor numbers or letters, and room names. Tactile text descriptors are required for pictograms that

are provided to label or identify a permanent room or space. Pictograms that provide information about a room or space, such as "no smoking," occupant logos, and the International Symbol of Accessibility, are not required to have text descriptors.

ADAAG 703.1 General.

Signs shall comply with 703. Where both visual and tactile characters are required, either one sign with both visual and tactile characters, or two separate signs, one with visual, and one with tactile characters, shall be provided.

ADAAG 703.4.1 Height Above Finish Floor or Ground.

Tactile characters on signs shall be located 48 inches (1220 mm) minimum above the finish floor or ground surface, measured from the baseline of the lowest tactile character and 60 inches (1525 mm) maximum above the finish floor or ground surface, measured from the baseline of the highest tactile character.

ADAAG 703.4.2 Location.

Where a tactile sign is provided at a door, the sign shall be located alongside the door at the latch side. Where a tactile sign is provided at double doors with one active leaf, the sign shall be located on the inactive leaf. Where a tactile sign is provided at double doors with two active leafs, the sign shall be located to the right of the right hand door. Where there is no wall space at the latch side of a single door or at the right side of double doors, signs shall be located on the nearest adjacent wall. Signs containing tactile characters shall be located so that a clear floor space of 18 inches (455 mm) minimum by 18 inches (455 mm) minimum, centered on the tactile characters, is provided beyond the arc of any door swing between the closed position and 45-degree open position.

e) Non-compliant door swing of door of men's restroom. Restroom door swings into the floor space of fixtures in men's restroom which makes it difficult for Plaintiff to maneuver his wheelchair to access and use the restroom.

ADAAG 603 Toilet and Bathing Rooms

ADAAG 603.1 General.

Toilet and bathing rooms shall comply with 603.

ADAAG 603.2.3 Door Swing.

Doors shall not swing into the clear floor space or clearance required for any fixture.

f) Non-compliant door lock at door of men's restroom requires tight grasping and pinching, which makes it difficult for Plaintiff to open, close, and lock the door while also having to guide and maneuver his wheelchair.

ADAAG 404 Doors, Doorways, and Gates

ADAAG 404.1 General.

Doors, doorways, and gates that are part of an accessible route shall comply with 404.

ADAAG 404.2.7 Door and Gate Hardware.

Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4.

ADAAG 309.4 Operation.

Operable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate operable parts shall be 5 pounds maximum.

g) Inaccessible water closet in men's restroom. Required minimum clearance not provided at water closet in men's restroom making it difficult for Plaintiff to access the restroom because of there being no room to maneuver his wheelchair.

ADAAG 604 Water Closets and Toilet Compartments

ADAAG 604.3 Clearance.

Clearances around water closets and in toilet compartments shall comply with 604.3.

ADAAG 604.3.1 Size.

Clearance around a water closet shall be 60 inches (1525 mm) minimum measured perpendicular from the side wall and 56 inches (1420 mm) minimum measured perpendicular from the rear wall.

h) Non-compliant existing grab bar at rear wall of water closet in men's restroom does not meet minimum size requirement makes it difficult for Plaintiff to transfer in and out of his wheelchair.

ADAAG 604 Water Closets and Toilet Compartments

ADAAG 604.5.2 Rear Wall.

The rear wall grab bar shall be 36 inches (915 mm) long minimum and extend from the centerline of the water closet 12 inches (305 mm) minimum on one side and 24 inches (610 mm) minimum on the other side.

i) Non-compliant existing grab bar at side wall of water closet in men's restroom does not meet minimum size requirement makes it difficult for Plaintiff to transfer in and out of his wheelchair.

ADAAG 604 Water Closets and Toilet Compartments

ADAAG 604.5.1 Side Wall.

The side wall grab bar shall be 42 inches (1065 mm) long minimum, located 12 inches (305 mm) maximum from the rear wall and extending 54 inches (1370 mm) minimum from the rear wall.

j) Insulation of pipes and water lines under the lavatory in men's restroom not provided as required making it uncomfortable for Plaintiff to use the sink.

ADAAG 606 Lavatories and Sinks.

ADAAG 606.5 Exposed Pipes and Surfaces.

Water supply and drainpipes under lavatories and sinks shall be insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces under lavatories and sinks.

**k)** Compliant signage identifying the women's restroom not provided as required making it difficult for Plaintiff to locate which restroom is supposed to be accessible.

ADAAG 216 Signs

ADAAG 216.1 General.

Signs shall be provided in accordance with 216 and shall comply with 703.

ADAAG 216.2 Designations.

Interior and exterior signs identifying permanent rooms and spaces shall comply with 703.1, 703.2, and 703.5. Where pictograms are provided as designations of permanent interior rooms and spaces, the pictograms shall comply with 703.6 and shall have text descriptors complying with 703.2 and 703.5.

Advisory 216.2 Designations.

Section 216.2 applies to signs that provide designations, labels, or names for interior rooms or spaces where the sign is not likely to change over time. Examples include interior signs labeling restrooms, room and floor numbers or letters, and room names. Tactile text descriptors are required for pictograms that are provided to label or identify a permanent room or space. Pictograms that provide information about a room or space, such as "no smoking," occupant logos, and the International Symbol of Accessibility, are not required to have text descriptors.

ADAAG 703.1 General.

Signs shall comply with 703. Where both visual and tactile characters are required, either one sign with both visual and tactile characters, or two separate signs, one with visual, and one with tactile characters, shall be provided.

ADAAG 703.4.1 Height Above Finish Floor or Ground.

Tactile characters on signs shall be located 48 inches (1220 mm) minimum above the finish floor or ground surface, measured from the baseline of the lowest tactile character and 60 inches (1525 mm) maximum above the finish floor or ground surface, measured from the baseline of the highest tactile character.

ADAAG 703.4.2 Location.

Where a tactile sign is provided at a door, the sign shall be located alongside the door at the latch side. Where a tactile sign is provided at double doors with one active leaf, the sign shall be located on the inactive leaf. Where a tactile sign is provided at double doors with two active leafs, the sign shall be located to the right of the right hand door. Where there is no wall space at the latch side of a single door or at the right side of double doors, signs shall be located on the nearest adjacent wall. Signs containing tactile characters shall be located so that a

clear floor space of 18 inches (455 mm) minimum by 18 inches (455 mm) minimum, centered on the tactile characters, is provided beyond the arc of any door swing between the closed position and 45-degree open position.

l) Accessible route to and from women's restroom not provided as required. Required minimum maneuvering clearance not provided at door of women's restroom. Making it difficult for Plaintiff to get to the restroom and then also to get into the restroom.

ADAAG 206 Accessible Routes

ADAAG 206.1 General.

Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.

ADAAG 402 Accessible Routes

ADAAG 402.1 General.

Accessible routes shall comply with 402.

ADAAG 402.2 Components.

Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4.

ADAAG 404.2.4 Maneuvering Clearances.

Minimum maneuvering clearances at doors and gates shall comply with 404.2.4. Maneuvering clearances shall extend the full width of the doorway and the required latch side or hinge side clearance.

m) Non-compliant door swing of door of women's restroom. Restroom door swings into the floor space of fixtures in women's restroom making it difficult for Plaintiff to maneuver his wheelchair to access the restroom

ADAAG 603 Toilet and Bathing Rooms

ADAAG 603.1 General.

Toilet and bathing rooms shall comply with 603.

ADAAG 603.2.3 Door Swing.

Doors shall not swing into the clear floor space or clearance required for any fixture.

n) Inaccessible door lock at door of women's restroom. Non-compliant height of door lock at door of women's restroom exceeds maximum height allowance, which makes it difficult for Plaintiff to open, close, and lock the door while also having to guide and maneuver his wheelchair.

ADAAG 404 Doors, Doorways, and Gates

ADAAG 404.1 General.

Doors, doorways, and gates that are part of an accessible route shall comply with 404.

ADAAG 404.2.7 Door and Gate Hardware.

Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4.  Operable parts of such hardware shall be 34 inches (865 mm) minimum and 48 inches (1220 mm) maximum above the finish floor or ground.

o) Non-compliant door lock at door of women's restroom requires tight grasping and pinching which makes it difficult for Plaintiff to open, close, and lock the door while also having to guide and maneuver his wheelchair.

ADAAG 404 Doors, Doorways, and Gates

ADAAG 404.1 General.

Doors, doorways, and gates that are part of an accessible route shall comply with 404.

ADAAG 404.2.7 Door and Gate Hardware.

Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4.

ADAAG 309.4 Operation.

Operable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate operable parts shall be 5 pounds maximum.

p) Insulation of pipes and water lines under the first of two lavatories in women's restrooms are not provided as required making it uncomfortable for Plaintiff to use the sink.

ADAAG 606 Lavatories and Sinks.

ADAAG 606.5 Exposed Pipes and Surfaces.

Water supply and drainpipes under lavatories and sinks shall be insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces under lavatories and sinks.

q) Insulation of pipes and water lines under the second of two lavatories in women's restroom not provided as required making it uncomfortable for Plaintiff to use the sink.

ADAAG 606 Lavatories and Sinks.

ADAAG 606.5 Exposed Pipes and Surfaces.

Water supply and drainpipes under lavatories and sinks shall be insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces under lavatories and sinks.

r) Inaccessible water closet in women's restroom. Required minimum clearance not provided at water closet in women's restroom making it difficult for Plaintiff to maneuver his wheelchair to access the restroom.

ADAAG 604 Water Closets and Toilet Compartments

ADAAG 604.3 Clearance.

Clearances around water closets and in toilet compartments shall comply with 604.3.

ADAAG 604.3.1 Size.

Clearance around a water closet shall be 60 inches (1525 mm) minimum measured perpendicular from the side wall and 56 inches (1420 mm) minimum measured perpendicular from the rear wall.

s) Non-compliant existing grab bar at rear wall of water closet in women's restroom does not meet minimum size requirement making it difficult for Plaintiff to transfer in and out of his wheelchair.

ADAAG 604 Water Closets and Toilet Compartments

ADAAG 604.5.2 Rear Wall.

The rear wall grab bar shall be 36 inches (915 mm) long minimum and extend from the centerline of the water closet to 12 inches (305 mm) minimum on one side and 24 inches (610 mm) minimum on the other side.

t) Non-compliant existing grab bar at side wall of water closet in women's restroom does not meet minimum size requirement making it difficult for Plaintiff to transfer in and out of his wheelchair.

ADAAG 604 Water Closets and Toilet Compartments

ADAAG 604.5.1 Side Wall.

The side wall grab bar shall be 42 inches (1065 mm) long minimum, located 12 inches (305 mm) maximum from the rear wall and extending 54 inches (1370 mm) minimum from the rear wall.

u) Inaccessible toilet paper dispenser in women's restroom. Non-compliant position of toilet paper dispenser from water closet in women's restroom making it difficult for Plaintiff to get toilet paper out.

ADAAG 604 Water Closets and Toilet Compartments.

ADAAG 604.7 Dispensers.

Toilet paper dispensers shall comply with 309.4 and shall be 7 inches (180 mm) minimum and 9 inches (230 mm) maximum in front of the water closet measured to the centerline of the dispenser.

v) Inaccessible coat hook in women's restroom. Non-compliant height of coat hook in women's restroom exceeds maximum height allowance making it difficult for Plaintiff to hang his belongings up while.

> ADAAG 604 Water Closets and Toilet Compartments.
>
> ADAAG 604.8.3 Coat Hooks and Shelves.
>
> Coat hooks shall be located within one of the reach ranges specified in 308.
>
> ADAAG 308.2 Forward Reach.
>
> ADAAG 308.2.1 Unobstructed.
>
> Where a forward reach is unobstructed, the high forward reach shall be 48 inches maximum, and the low forward reach shall be 15 inches minimum above the finished floor or ground.
>
> ADAAG 308.2.2 Obstructed High Reach.
>
> Where a high forward reach is over an obstruction, the clear floor space shall extend beneath the element for a distance not less than the required reach depth over the obstruction. The high forward reach shall be 48 inches maximum where the reach depth is 20 inches maximum. Where the reach depth exceeds 20 inches, the high forward reach shall be 44 inches maximum, and the reach depth shall be 25 inches maximum.
>
> ADAAG 308.3 Side Reach.
>
> ADAAG 308.3.1 Unobstructed.
>
> Where a clear floor or ground space allows a parallel approach to an element and the side reach is unobstructed, the high side reach shall be 48 inches maximum, and the low side reach shall be 15 inches minimum above the finish floor or ground.
>
> ADAAG 308.3.2 Obstructed High Reach.
>
> Where a clear floor or ground space allows a parallel approach to an element and the high side reach is over an obstruction, the height of the obstruction shall be 34 inches maximum, and the depth of the obstruction shall be 24 inches maximum. The high side reach shall be 48 inches maximum for a reach depth of 10 inches maximum. Where the reach depth exceeds 10 inches, the high side reach shall be 46 inches maximum for a reach depth of 24 inches maximum.

16. The barriers listed above are not to be considered all-inclusive of the barriers, conditions, and/or violations which exist at the Subject Premises—as naturally Plaintiff, havingencountered and observed these initial barriers to access, was denied full access to all areas of the Subject Premises.

17. A full inspection being completed to ensure that the Subject Premises is in full compliance with the ADA and ADAAG would be in the best interests of all Parties to this action

and to all future disabled patrons. A full inspection would protect Plaintiff from the likelihood further discrimination, difficulty, frustration, and social embarrassment of encountering additional barriers to access once he has equal, full, and unrestricted access to all public areas of the Subject Premises—and Defendants would benefit from an inspection of the entire Subject Premises, as they will be able to efficiently identify all barriers to access and finally bring the Subject Premises into compliance with the ADA, which was enacted over three (3) decades ago, preventing further discrimination based on disability towards any future patrons.

18. The removal of the physical barriers, dangerous conditions, and ADA violations set forth herein is readily achievable and can be accomplished and carried out without much difficulty or expense pursuant to 42 U.S.C. § 12182(B)(2)(A)(iv); 42 U.S.C. § 12181(9); and 28 C.F.R, § 36.304.

19. The ADA defines "readily achievable as "easily accomplishable and without much difficult or expenses." 42 U.S.C. §12181(9) Congress included in the ADA factors to be considered in evaluating whether removal of a barrier is "readily achievable." These factors are (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity, and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. Garthright-Dietrich v. Atlanta Landmarks, Inc., 452 F. 3d 1269, 1272-73 (11th Cir. 2006).

20. The obligation to engage in readily achievable barrier removal is a continuing one. Over time, barrier removal that initially was not readily achievable may later be required because of changed circumstances. DOJ ADA Title III Technical Assistance Manual, Section III-4.4400 Continuing obligation.

21. Plaintiff will undoubtedly continue to return to the Subject Premises as he lives so close and visits the Lincoln Road Shopping District and restaurants regularly. Plaintiff specifically looks forward to visiting the Subject Premises once the barriers to access have been remediated—not only to avail himself of the goods and services available at the Subject Premises, but to confirm and assure himself that the Subject Premises has been brought into compliance with the ADA and *maintained* in compliance with the ADA so that Plaintiff and other persons with disabilities will have equal access to the Subject Premises without fear of discrimination, endangerment of their safety, or social and public embarrassment.

22. Plaintiff is an advocate of the rights of similarly situated persons with disabilities and an advocate for asserting his own civil rights independent of his personal desire to access this place of public accommodation as required by law. However, Plaintiff is discouraged from returning to the Subject Premises, despite loving the food and atmosphere at Lobster Shack, as long as the Defendants continue to operate the Subject Premises in violation of the ADA and ADAAG.

23. Plaintiff has a realistic, credible, and continuing threat of discrimination by the Defendants as long as the Subject Premises remains in non-compliance with the ADA—especially considering that Defendants knew, or should have known, that they were required to comply with the ADA, but instead chose to design, construct, open, and continue to operate the restaurant and bar at the Subject Premises with barriers and violations of the ADA and ADAAG.

24. Defendants have discriminated against Plaintiff and others with disabilities by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Premises, as prohibited by 42 U.S.C., § 12182, *et. seq.*, and by failing to remove architectural barriers as required by 42 U.S.C., § 12182(b)(2)(A)(iv) and will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants are absolutely required to remove all physical barriers that exist at the Subject Premises, including those specifically set forth herein, and make the Subject Premises accessible to and usable by Plaintiff and other persons with disabilities.

25. Plaintiff has suffered and continues to suffer direct and indirect injury as a result of the ADA and ADAAG violations that exist at the Subject Premises and the actions or inactions described herein.

26. Plaintiff is without adequate remedy at law and is suffering irreparable harm and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants are required to remove the physical barriers, dangerous conditions, and ADA violations that exist at the Subject Premises, including those set forth herein.

27. Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action. The Plaintiff is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants, pursuant to 42 U.S.C., §§ 12205 and 12217.

28. Pursuant to 42 U.S.C. §12188(a), this Court is provided with authority to grant injunctive relief to Plaintiff, including an order to alter the Subject Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, and closing the Subject Premises until the requisite modifications are completed.

**WHEREFORE,** Plaintiff respectfully requests that the Court issue a permanent injunction enjoining Defendants from continuing their discriminatory practices, ordering Defendants to remove the physical barriers to access and alter the Subject Premises to make their restaurant and bar readily accessible to and useable by individuals with disabilities to the extent required by the ADA, closing the Subject Premises until the barriers are removed and requisite alterations are completed, and awarding Plaintiff his reasonable attorney's fees, expert fees, costs, and litigation expenses incurred in this action.

                                      Respectfully submitted,

                                      s/ Glenn R. Goldstein
                                      Glenn R. Goldstein, Esq. (FBN: 55873)
                                          *Attorney for Plaintiff*
                                      Glenn R. Goldstein & Associates, PLLC
                                      8101 Biscayne Blvd., Ste. 504
                                      Miami, Florida 33138
                                      (561) 573-2106
                                      GGoldstein@G2Legal.net

                                      s/ Lauren N. Wassenberg
                                      Lauren N. Wassenberg, Esq. (FBN: 34083)
                                          *Attorney for Plaintiff*
                                      Lauren N. Wassenberg & Associates, P.A.
                                      33 SE 4th St., Ste. 100
                                      Boca Raton, FL 33432
                                      (305) 804-5435
                                      WassenbergL@gmail.com